**UNITED STATES of America,**
**Appellant,**

v.

**Bill D. WARD, Appellee.**

No. 19559.

United States Court of Appeals
Fifth Circuit.

Nov. 7, 1962.

John G. Laughlin, John C. Eldridge, John W. Boult, Attys. Dept. of Justice, Washington, D. C., Joseph D. Guilfoyle, Acting Asst. Atty. Gen., Ernest Morgan, U. S. Atty., for appellant.

Sander W. Shapiro, Clark, Thomas, Harris, Denius & Winters, Austin, Tex., for appellee.

Before TUTTLE, Chief Judge, and HUTCHESON and BROWN, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal by the United States from a judgment of the trial court en-

tered on a motion for summary judgment by the appellee in a suit brought by the United States against him for additional wages for Mexican employees and which the United States had paid to the Mexican government pursuant to Article 32 of the Migrant Labor Agreement of 1951. The government's claim was based upon the appellee's alleged illegal deduction from the final seasonal wages of some twenty-six Mexican migrant workers, the payment by the United States of the sum owing those workers pursuant to the guarantee contained in Article 32, and appellee's contractual agreement to indemnify the United States for such guaranteed payments.

The principal issue before the trial court, which it resolved in favor of the employer, Ward, is whether payments made to the Mexican migrant workers before their departure from Mexico or to others on their behalf with the knowledge of the employer that these advances were to go to persons in Mexico for facilitating the employment of these particular Mexican workers were properly deductible by the employer as an "advance against wages," [1] or were prohibited as a violation of Article 36, which prohibited the participation of private employment or labor contracting agencies in the contracting of Mexican workers.[2]

It is not seriously disputed that upon the termination of the employment of the Mexican workers, Ward deducted the sum of $449.50, which represented sums that he had paid out on their accounts prior to the commencement of their services in the United States. Neither is it disputed that this sum was paid by the United States Government to an official of the Republic of Mexico.[3] The government thereafter made demand on Ward for reimbursement of this sum, and this demand was denied. Thereupon the present suit was filed. The government's motion for summary judgment was denied. A similar motion on behalf of Ward was granted.

The original determination that the sum of $449.50 had been improperly deducted from the wages of the Mexican workers was made by representatives of the Secretary of Labor of the United States. Thereafter, in accordance with the procedures provided for by Article 30 of the Agreement, and based upon the evidence revealed by the investigation, representatives of the Governments of the United States and the Republic of Mexico made joint findings of fact and a joint determination that Ward was liable in the total amount of $449.50 "which represents the sum total of illegal deductions made from the wages of the follow-

---

1. Article 6 of the Migrant Labor Agreement of 1951, as amended, expressly provides that "the employer may make the following deductions only: * * * (b) Advances against wages."

2. Article 36: "Exclusion of Intermediaries. In no case shall private employment or labor contracting agencies operating for profit be permitted to participate in the contracting of Mexican workers."

---

3. Exhibit No. 13 is the covering letter under which the United States Treasury check was sent as follows:

"Oct. 28, 1959
"The Honorable Jose T. Delgado,
"Minister Counselor,
"The Mexican Embassy,
"Washington, D. C.

"Dear Mr. Delgado: It has been determined that Mr. Bell D. Ward, Juno, Texas, is indebted to twenty-six (26) Mexican nations in the sum of $449.50.

"Enclosed for forwarding to the Secretary of Foreign Relations in Mexico is United States Treasury Check number 58,044,317, dated October 20, 1959, in the amount of $449.50, in payment of the amounts found due the workers.
"Also enclosed is a list of the workers, their addresses, and the amounts due each worker.

"Sincerely yours,
"DON LARIN,
"Acting Assistant Director in Charge of Farm Labor."

ing twenty-six Mexican workers contracted to the subject employer:" (then followed the names of the individual employees). The joint findings of fact No. 1 were as follows: "The employer, Bill D. Ward, Juno, Texas, deducted the following amounts from the wages of the below indicated workers, which, as reflected by the employer's records are attributable to a 'Mexican processing fee'. The braceros from whose wages these amounts were deducted had no knowledge that any cash was advanced to them or credited in their behalf at the time that these amounts were allegedly advanced. The deductions covered the payment of a fee to a third person in Mexico in order to facilitate and expedite the contracting of each of the below listed nationals:" (then follows the list of individual migrant workers).

Upon notice being given of Ward's right to appeal, the appellee took an appeal and submitted evidence in his behalf. This appeal was had before the representatives of the governments of the Republic of Mexico and the United States. In its joint determination, this administrative tribunal said, "Although there is some conflict in the evidence with respect to the question of whether the workers had knowledge of the advances made to them or in their behalf, it appears from the record that the employer clearly made these advances for the payment of 'mordida' in Mexico."[4] According to the report of the Department of Labor's investigator, the employers records disclosed that the amounts deducted from the wages of the workers in question were for a "Mexicol processing fee, and the employer's own statement, as well as the affidavits he obtained from four of the workers indicate that the cash advanced was to be spent in the payment of 'mordida.'" While, therefore the joint determination did not precisely reiterate its prior findings of fact, the foregoing statement is a definite finding of fact,

which, under the agreement, is binding on the employer.

In fact the employer does not seriously contest the truth of the assertions contained in the last preceding paragraph, for, in his argument in his printed brief before us, in seeking to sustain a defense on another ground, appellee said:

"Acting on the advice so given by the Labor Department and the Justice Department Appellee made it plain to each worker who requested an advance that Appellee *refused to foot the bill for the practice of mordida.* If the Mexican worker wanted to pay mordida it was up to him but *Appellee would consider the amount so advanced as an advance against wages* deductible from the future wages of the worker. No worker was advanced an amount to pay mordida without this prior understanding—that Appellee would not pay the amount unless the worker understood and consented that it was to be treated by Appellee as an advance against wages which would be deducted from the wages of the worker under authority of Article 6 of the Work Contract. In every case the prior consent of the worker was obtained. In every case appellee relied upon such consent in paying out the advance.

"In deducting the amounts as an advance against wages Appellee relied upon the assurances of the Labor Department that *he was not obligated for the mordida* and relied upon the consent of the worker to the deduction. Appellee would not have paid or deducted the amounts in question here without such assurances and consents." (Emphasis added)

It thus becomes a question whether the fact that the migrant workers knew that part of their wages were to go to

4. The term "mordida" is used throughout with the knowledge of all parties concerned that it meant the payment to some person in Mexico to make it easier to get the Mexican workers to work for the United States employer.

employment agents or unauthorized persons and consented to it, authorizes the payments thus made, whether by them or by the employer directly, to be deducted as "an advance of wages." In passing on this question we do not need to treat the legal determination by the joint Board as having the same binding effect as it has on questions of fact, a point much argued by the appellee here of United States v. Morris, 5 Cir., 252 F.2d 643. We think that the record here fully supports the government's contention that payments made to the prospective employees for the purpose of paying "mordida" or "Mexican processing fees," can not legally be considered as advances of wages in light of the clear prohibition against the employment of outside agencies. We think it is plain from an understanding of the whole history of the underlying statutes and the Migrant Labor Agreement of 1951, as amended, that there were some matters as to which the parties themselves could not contract. It seems equally clear that the terms of the Migrant Labor Agreement would supersede any effort by the migrants themselves to contract away any rights afforded them thereunder, or to acquiesce in any conduct that would amount to a violation of the agreement. On the other hand, the United States, by its agreement with Mexico, bound itself to a full and complete performance of the agreement in all of its terms. If, therefore, the migrant workers agreed to or did actually receive less than the contract provided for them, it became the duty of the United States to reimburse them and to charge the cost of such reimbursement to the employer under his indemnity agreement.

■ The appellee here claims, however, that his obligation as an indemnitor has been discharged because certain officials of the Department of Agriculture of the United States knew what he was doing since he called their attention to the fact that it might be illegal, and, so he says, they either winked at the practice or told him to be sure that he did it in the way that he thereafter handled it, to-wit, by obtaining the consent of the braceros. This is simply another way by which the appellee seeks to estop the United States by the conduct of its officials.[5] Such an effort is unavailing. See United States v. City and County of San Francisco, 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050, and Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10.

Further, the appellee contends that he has been discharged from his indemnity agreement because the government has not precisely carried out the terms of payment to the Mexican workers provided for under the Migrant Labor Agreement. Appellee contends that the United States is not entitled to call on him for reimbursement under his indemnity agreement without a showing either that the amounts due the workers were actually paid to them, or, under Article 33, payment was authorized to be made to the Consul of Mexico with a cashier's check payable to the Secretary of the Foreign Ministry of Mexico. Appellee says the latter form of payment can be used only where the address of a Mexican worker in the United States can not be ascertained. He says that the exhibits on file in the trial court demonstrate that the addresses of these twenty-six workers were known and furthermore he contends that a subsequent "joint interpretation" of Article 33 binding on all parties, required that even as to those payments for workers whose addresses can not be ascertained they must be made by a check "drawn in favor of both the worker and the Secretaria de Relaciones Exteriores de Mexico," and, so he says, it is demonstrated by the letter of transmission, footnote 3, supra, the $449.50 pay-

5. The officials concerned deny that any such agreements or understanding had been had with him. This, of course, would have required a trial on the merits in the court below if this defense had been the basis of the court's decision in denying the United States its motion for summary judgment.

ment in this case was not made precisely in that manner.[6] There was no showing that the addresses of the twenty-six braceros in the United States were known. In fact, the documents indicated that they had no addresses in the United States but had then returned to Mexico. Thus, Article 33 came into play.

■ In view of the requirement that the check be drawn in the name of the Mexican worker *or* the Secretary of Foreign Relations of Mexico, we think this was substantially complied with when the check was drawn in favor of the Secretary of Foreign Relations of Mexico for the purpose of paying the 26 individuals, because a check made payable to the Mexican worker *or* the Secretary of Foreign Relations could, of course, be negotiated by either the worker or the Secretary. Therefore, there came into play the provision of Article 33 which provides that: "The employer and United States Government shall be relieved of responsibility for the claims covered by such payment as soon as the check is delivered to the Mexican Consul."

We think it clear that the motion of the United States for summary judgment should have been granted. The summary judgment for the employer was, therefore, erroneous.

The judgment is reversed and the case is remanded with directions to enter a judgment in favor of the United States.

### 6. JOINT INTERPRETATION OF 1954

"Article 33 is construed to mean that all sums due a Mexican worker whose address cannot be ascertained whether such amounts were earned prior or subsequent to May 19, 1952, shall be paid to the appropriate Mexican Consul by a cashier's check, a certified check, a money order or such other form of negotiable instrument as may be satisfactory to the Mexican Government, drawn in favor of both the worker and the Secretaria de Relaciones Exteriores de Mexico (Ministry of Foreign Relations of Mexico), precisely in the following manner:
"(Name of Meixcan Worker)
or Secretaria de Relaciones
Exteriores de Mexico
"The check shall be drawn as indicated in favor of both names."